UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUCIANO DELGADO,
Petitioner,
v.
RON RACKLEY,
Respondent.

NO. CV 14-3221-RT (AGR)

ORDER TO SHOW CAUSE

On April 28, 2014, Petitioner filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, it appears that the one-year statute of limitations has expired.

The court, therefore, orders Petitioner to show cause, on or before ***June 16, 2014***, why this court should not recommend dismissal of the petition with prejudice based on expiration of the one-year statute of limitations.

## I.

## PROCEDURAL BACKGROUND

On January 6, 1992, Petitioner pled guilty to one count of second degree murder and one count of attempted murder, and admitted a gun enhancement. (Petition at 2-3.) Petitioner was sentenced to 20 years to life. (Petition, Ex. A.) He did not appeal. (Petition at 3.)

On July 24, 2013, the Superior Court summarily denied Petitioner's amended habeas petition. (Petition, Ex. Q.) On September 26, 2013, the California Court of Appeal denied Petitioner's habeas petition because he had "not stated facts sufficient to support relief." (*Id.*, Ex. R.) On January 29, 2014, the California Supreme Court summarily denied Petitioner's habeas petition. (*Id.*, Ex. S.)

On April 28, 2014, Petitioner filed the instant petition in this court in which he raises five grounds. (Petition at 6-7.)

## II.

## STATUTE OF LIMITATIONS

The petition was filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the court applies the AEDPA in reviewing the petition. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

The AEDPA contains a one-year statute of limitations for a petition for writ of habeas corpus filed in federal court by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). The one-year period starts running on the latest of either the date when a conviction becomes final under 28 U.S.C. § 2244(d)(1)(A) or on a date set in § 2244(d)(1)(B)-(D).

### A. The Date on Which Conviction Became Final – § 2244(d)(1)(A)

Because Petitioner did not appeal, his conviction became final 60 days after his conviction (January 6, 1992) on March 6, 1992. California Rules of

Court 8.308(a) (formerly Rule 30.1). Because the conviction became final before the AEDPA was enacted, Petitioner had until April 24, 1997, to file a federal habeas petition. *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003). Absent tolling, the petition is time-barred.

**1. Statutory Tolling**

The statute of limitations is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Because Petitioner did not file his first state habeas petition until 2013, he is not entitled to statutory tolling. *See Welch v. Carey*, 350 F.3d 1079, 1081-84 (9th Cir. 2003) (state habeas petition filed after the limitations has expired does not revive the expired limitations period).

**2. Equitable Tolling**

"[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling." *Holland v. Florida,* 130 S. Ct. 2549, 2554, 177 L. Ed. 2d 130 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Id.* at 2565 (citations and quotation marks omitted). The extraordinary circumstances must have been the cause of an untimely filing. *Pace*, 544 U.S. at 418. "[E]quitable tolling is available for this reason only when '"extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time"' and '"the extraordinary circumstances" were the *cause* of [the prisoner's] untimeliness.'" *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citations omitted, emphasis in original).

There is no indication in the petition that Petitioner is entitled to equitable tolling.

**B. Date of Discovery – 28 U.S.C. § 2244(d)(1)(D)**

In the context of an ineffective assistance claim, the statute of limitations may start to run on the date a petitioner discovered (or could have discovered) the factual predicate for a claim that his counsel's performance was deficient, or on the date a petitioner discovered (or could have discovered) the factual predicate for prejudice, whichever is later. *See Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Therefore, the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The statute starts to run when the petitioner knows or through diligence could discover the important facts, not when the petitioner recognizes their legal significance. *Hasan*, 254 F.3d at 1154 n.3.

Petitioner alleges his trial counsel was ineffective because he failed "to investigate and discover exculpatory scientific evidence" implicating another person (Hector Navarro) as the shooter. (Petition at 22-23.)

Petitioner was aware of the factual predicates of his claim of ineffective assistance of trial counsel by the time he pled guilty. Accordingly, the date of discovery does not assist Petitioner.

**C. Actual Innocence**

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . the impediment . . . of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115

S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (emphasizing that the *Schlup* standard is 'demanding' and seldom met)).

To satisfy the standard, a petitioner must present "'new reliable evidence.'" *House*, 547 U.S. at 537. Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* at 538 (citation omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

In Ground One, Petitioner argues that the prosecutor failed to disclose that the weapon used in his case was used in three other gang shootings involving the same two gangs, Little Hill and Townsmen. According to Petitioner, sheriff investigators implicated Little Hill gang member Hector Navarro in the murder of Anthony Guiterrez. (Petition at 8.) This evidence would have "demonstrate[d Petitioner's] innocence" for the following reasons: (1) the "identical nature" of the gang shootings involving the same gangs and the same weapon was obviously motivated by an ongoing gang conflict and Petitioner is not a member of a criminal street gang; and (2) there was no evidence in Petitioner's case connecting the gun to him. (Petition at 9.)

Exhibit B to the petition contains a complaint report dated June 7, 1991, completed by the Los Angeles County Sheriff's Department ("LASD") about the incident.[1] There was an eyewitness to the incident (Garcia) who "said he could positively identify all the suspects if he saw them again." (Petition, Ex. B at 175.) Garcia identified two individuals from a six-pack, one as the shooter and one as a passenger in the same vehicle. (*Id.* at 178.) The report does not contain the

---

[1] Exhibit H to the petition, a statement by the two victims in Petitioner's case, refers to the same case number as in Exhibit B. (*Compare* Petition, Ex. H at first page *with* Ex. B at 167.)

names of the two individuals Garcia identified. However, at the preliminary hearing, the investigating officer testified that Garcia identified Petitioner. (Ex. L at 15-16.)

Exhibit C to the petition contains another complaint report dated June 10, 1991, completed by the LASD about another incident. There is no mention of Navarro in the report. Although the police found 10 mm casings, there is no indication that the gun used in this incident is the same as the one used in Petitioner's incident. (Petition, Ex. C at 196.)

Exhibit D to the petition contains another complaint report dated June 24, 1991, completed by the LASD about a third incident. There is no mention of Navarro in this report. The police found both 9 mm and 10 mm gun casings but no evidence connecting the gun or guns used in this case to the gun used in Petitioner's. There is discussion of the two gangs and an "'gang conflict," but such reports do not exonerate Petitioner. (Petition, Ex. D at 270.)

Exhibit E to the petition contains another complaint report dated June 24, 1991, completed by the LASD about a fourth incident. There is no mention of Navarro or a 10 mm gun in this report. The two gangs are mentioned. (Petition, Ex. E at 276.)

Exhibit F is a report from the LASD Scientific Services Bureau dated July 10, 1991. It indicates that a Glock 10 mm gun was tested, and it was found that the "fired cartridge cases from the . . . pistol were positively identified to cartridge cases" in four cases. (Petition, Ex. F at 57.) Petitioner's case is 491-11447-1442-051. (Petition, Ex. B at 167.) That case is not listed as a positive identification. (*Id.* Ex. F at 57.)

On page two of the forensic report, four cases are noted in Case 091-11447-1442-011 in which Navarro was a suspect and Guiterrez was a victim. (*Id.* at 56.) That is not Petitioner's case. The report stated that the gun used in that case "could have been fired from the [same] . . . pistol" in several other cases

because it "has the same general characteristics." Petitioner's case is not mentioned. (*Id.*)

Page three of the report involves a case in which Petitioner was a suspect and Anthony Romero was a victim, Case 491-11725-1443-051 (not the same case number as in Exhibit B). It is not clear what the findings were. (*Id.* at 58.)

Petitioner does not meet the "stringent showing" required by actual innocence. His only evidence are the police reports and other reports that are exhibits to petition. There is no indication that this is "new" evidence. Petitioner does not state when he obtained these reports. Nor do the reports demonstrate that Petitioner was actually innocent of the crimes to which he pled guilty.

In Petitioner's plea agreement, he stated there was a factual basis for his plea. (Petition, Ex. A.)

Two other exhibits to the petition implicate Petitioner in the crime. On June 24, 1991, the LASD investigator assigned to the case (Skahill) interviewed the two victims. As an introduction, Skahill says the two gangs involved were Little Hill and Townsman. At 11:15 on June 10, 1991, the date of the incident, Skahill was contacted by Rick Keller who said that Petitioner, who was 16 at the time, was a Little Hill gang member and had shot Guiterrez.[2] Petitioner's moniker was Luchi. Guiterrez's moniker was Oso. (Petition, Ex. H at page 1.)

On August 20, 1991, Sergeant Edmundson interviewed Joey Reyes. (Petition, Ex. G at 27.) The interview was transcribed. Guel's moniker was Boxer. (*Id.* at 33.) Reyes is a Townsmen gang member. (*Id.* at 28.) On the day of the crime, the two gangs "got together." (*Id.* at 29-30.) Apparently before the incident they were not rivals. (*Id.* at 29.) Reyes identified Petitioner as a Little Hill gang member and said he was one of the individuals who showed up that day. (*Id.* at 30-31.) Petitioner was in a car in the front passenger seat. (*Id.* at 31.) No

[2] Guiterrez died on July 9, 1991. (Petition, Ex. H at page 2.)

one else except the driver was in the car. (*Id.* at 30.) Reyes had known Petitioner for about three years. (*Id.* at 31.) The two had been friends "at one point." (*Id.*) When Petitioner got out of the car, he said "hey, man, fuck you, fuck trash men," which was an insult to the Townsmen. (*Id.* at 31-32.) Petitioner reached into the car, pulled out a gun that looked to Reyes like a .45, and shot four times at "another group" of Townsmen. (*Id.* at 32-33.) He shot at the two victims. (*Id.* at 33.) Petitioner is also known as Boxer, like Guel. (*Id.* at 34.) According to Reyes, Petitioner shot Guel because they had the same nicknames. (*Id.*)

Petitioner has not demonstrated actual innocence of the two crimes. He has failed to "persuade[] the . . . court that, in light of the [allegedly] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928.

**III.**

**ORDER TO SHOW CAUSE**

IT IS THEREFORE ORDERED that, on or before ***June 16, 2014***, Petitioner shall show cause why the court should not recommend dismissal of the petition based on expiration of the one-year statute of limitations.

**If Petitioner fails to respond to the order to show cause by the above deadline, the court will recommend that the petition be dismissed with prejudice based on expiration of the one-year statute of limitations.**

DATED: May 14, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge